# EXHIBIT A

**08 C 750**

**JUDGE MANNING**
**MAGISTRATE JUDGE MASON**

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | |
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| SUMMONS | ALIAS - SUMMONS | CCG N001-10M-1-07-05 ( ) |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, _____ LAW _____ DIVISION

(Name all parties)

Walter N. Kosch, Walter T. Kosch, The Sonnenschein Groupe

}

2007L014112
CALENDAR/ROOM
TIME 00:00
Breach of Contract

v.

No. _____

FFIC/BEAM, Inc., a Philippine corporation et al

TO: See attached service list

## SUMMONS

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ **Richard J. Daley Center, 50 W. Washington, Room** _____, **Chicago, Illinois 60602**

❑ **District 2 - Skokie**
5600 Old Orchard Rd.
Skokie, IL 60077

❑ **District 3 - Rolling Meadows**
2121 Euclid
Rolling Meadows, IL 60008

❑ **District 4 - Maywood**
1500 Maybrook Ave.
Maywood, IL 60153

❑ **District 5 - Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL 60455

❑ **District 6 - Markham**
16501 S. Kedzie Pkwy.
Markham, IL 60426

❑ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois 60602

**You must file within 30 days after service of this Summons, not counting the day of service.**
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

WITNESS, _____ DEC 1 9 2007 _____

Atty. No.: 22869
Name: Michael Lee Tinaglia
Atty. for: Plaintiffs
Address: 9700 W. Higgins Road, Suite 1015
City/State/Zip: Rosemont, IL 60018
Telephone: (847) 692-0421

_____
Clerk of Court

Date of service: _____
(To be inserted by officer on copy left with defendant
or other person)

Service by Facsimile Transmission will be accepted at: _____

(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

WALTER N. KOSCH, WALTER T. KOSCH, and )
THE SONNENSCHEIN GROUPE, a defacto limited liability )
Company, )
)
)
        Plaintiffs, )
)
v. )
)
FFIC/BEAM, INCORPORATED, a Philippine corporation, )
FFIC/BEAM, INC.  NEW JERSEY, FFIC/BEAM )
WASHINGTON, THE BOARD OF DIRECTORS OF )
FFIC/BEAM, INCORPORATED consisting of ROBERT )
FIELDS, Managing Director, REYNALDO SANTOS, )
PRIMROSE E. AUTAJAY, PRELU E. AUTAJAU, )
SOLEDAD O. HERNAEZ, JOSEFA T. DORAN, VICENTE )
A. CALIJO, STELLA V. CALIBJO, JOHN NG, PAUL D. )
CHAFIOTTE, EDWARD J. VILLANUEVA,  ROBERT )
FIELDS, an individual, KARL NEUBACHER, an individual, )
TIMOTHY SLIFKIN, an individual, ALLIED MORTGAGE )
GROUP, a corporation, METROPOLITAN FINANCIAL )
SERVICES, INC., a corporation and AARON RANSOM, )
an individual, )
)
        Defendants. )

2007L014112
CALENDAR/ROOM N
TIME 00:00
Breach of Contract

FILED-18
07 DEC 19 AM 9 10
CIRCUIT COURT OF COOK
COUNTY, ILLINOIS
LAW DIVISION
DOROTHY BROWN
CLERK

## COMPLAINT

    NOW COMES the Plaintiffs, WALTER N. KOSCH, WALTER T. KOSCH, and the

SONNENSCHEIN GROUPE, a defacto limited liability company ("Sonnenschein")

(collectively "Sonnenschein Groupe") and for their complaint against FFIC/BEAM,

INCORPORATED, a Philippine corporation, ("FFIC"), FFIC/BEAM, INC.  NEW JERSEY

("FFIC New Jersey"), FFIC/BEAM WASHINGTON ("FFIC Washington DC"), THE BOARD

OF DIRECTORS OF FFICC consisting of ROBERT FIELDS, Managing Director,

REYNALDO SANTOS, PRIMROSE E. AUTAJAY, PRELU E. AUTAJAU, SOLEDAD O.

HERNAEZ, JOSEFA T. DORAN, VICENTE A. CALIJO, STELLA V. CALIBJO, JOHN NG,

PAUL D. CHAFIOTTE, EDWARD J.  VILLANUEVA,  (collectively "FFIC Board"),

ROBERT FIELDS, an individual ("Fields"), and KARL NEUBACHER, an individual

("Neubacher"), Timothy Slifkin, an individual ("Slifkin"), ALLIED MORTGAGE GROUP, a

corporation ("Allied"), METROPOLITAN FINANCIAL SERVICES, INC., a corporation ("Metropolitan") and AARON RANSOM ("Ransom"), an individual, state as follows:

## COMMON ALLEGATIONS

1. This is an action brought in this court alleging causes of action under common law for breach of contract, fraudulent misrepresentation, constructive fraud, conversion, accounting, civil conspiracy, and tortuous interference with business opportunity against Defendants.

2. This is also an action in this court alleging violations under the RACKETEERING INFLUENCE CORRUPT ORGANIZATION ACT, 18 U.S.C.S. §§ 1961-1968 ("RICO"), against Defendants.

3. Plaintiff, Walter N. Kosch, is a citizen of the County of Cook, State of Illinois.

4. Plaintiff, Walter T. Kosch, is a citizen of the County of Kane, State of Illinois.

5. Defendant, FFIC, is a corporation organized under the laws of the Republic of the Philippines with is principal place of business being 3rd Floor, EASCO Building, 2654 Leveriza Street, Malate, Manila 1000, Philippines. Defendant FFIC is a citizen of the Republic of the Philippines.

6. Defendant, FFIC New Jersey is a corporation and on information and belief FFIC New Jersey was organized under the laws of the State of New Jersey. On information and belief the principal place of business of FFIC New Jersey is 45 Park Place, Suite 265, Morris Town, New Jersey 07960. On information and belief FFIC New Jersey is a wholly owned subsidiary of FFIC. For purposes of jurisdiction FFIC/BEAM is a citizen of the State of New Jersey.

7. Defendant, FFIC Washington, DC is a corporation and on information and belief FFIC Washington, D.C., was organized under the laws of the District of Columbia. On information and belief the principal place of business of FFIC Washington, DC is 4000 Massachusetts Northwest, Suite 625, Washington, DC. 20003. On information and belief FFIC Washington, DC is a wholly owned subsidiary of FFIC. For purposes of jurisdiction FFIC Washington DC is a citizen of the District of Columbia.

8. Defendant, REYNALDO SANTOS is a director of FFIC and on information and belief is a citizen of the Republic of the Philippines.

9. Defendant, PRIMROSE E. AUTAJAY is a director of FFIC and on information and belief is a citizen of the Republic of the Philippines.

10. Defendant, PRELU E. AUTAJAU is a director of FFIC and on information and belief is a citizen of the Republic of the Philippines.

11. Defendant, SOLEDAD O. HERNAEZ is a director of FFIC and on information and belief is a citizen of the Republic of the Philippines.

12. Defendant, JOSEFA T. DORAN is a director of FFIC and on information and belief is a citizen of the Republic of the Philippines.

13. Defendant, VICENTE A. CALIJO is a director of FFIC and on information and belief is a citizen of the Republic of the Philippines.

14. Defendant, STELLA V. CALIBJO is a director of FFIC and on information and belief is a citizen of the Republic of the Philippines.

15. Defendant, JOHN NG, is a director of FFIC and on information and belief is a citizen of the Republic of the Philippines.

16. Defendant, PAUL D. CHAFIOTTE is a director of FFIC and on information and belief is a citizen of the State of New Jersey.

17. Defendant, EDWARD J. VILLANUEVA is a director of FFIC and on information and belief is a citizen of the District of Columbia.

18. Defendant, Fields, is an individual having his domicile and citizenship in Morris Town, State of New Jersey. At all times relevant to the matters alleged in this Complaint Fields was the Managing Director of FFIC.

19. Defendant, Neubacher, is an individual having his domicile and citizenship in the municipality of Monsee, in the Republic of Austria. At all times relevant to the matters alleged in this Complaint Neubacher was the agent and representative for certain matters between FFIC and Sonnenschein, Walter N. Kosch, Walter T. Kosch.

20. Defendant, Slifkin, is an individual and on information and belief is domiciled and a citizen of New Jersey and is the president of FFIC/Beam.

21. ALLIED MORTGAGE GROUP, Inc. on information and belief is a corporation organized under the laws of the State of Michigan and is the parent company of METROPOLITAN FINANCIAL SERVICES, INC..

22. METROPOLITAN FINANCIAL SERVICES, INC., on information and belief is a corporation organized under the laws of the State of Michigan.

23. AARON RANSOM, is an individual having his domicile and citizenship in the State of Michigan and is President of Allied and Metropolitan.

24. FFIC, and its agent Neubacher, hold FFIC out as organization which arranges and issues bonds and other financial instruments for purposes of raising capital for real estate acquisition, business development and other purposes of capital funding.

25. FFIC, Neubacher, Allied, Metropolitan and Ransom, hold Metropolitan and Allied out as organizations which are engaged in the mortgage banking and lending business.

26. Walter N. Kosch and Walter T. Kosch were first introduced to FFIC and Fields by Neubacher at a meeting in mid-January of 2007 where Neubacher represented to each Kosch that FFIC was arranging and issuing a bond offering for an initial public offering for an unrelated software corporation in Chicago, Illinois ("Software Company Transaction").

27. At that first meeting, Neubacher discussed his interest in acquiring certain land in Austria and developing the land into a hotel and resort with the Sonnenschein Groupe. While Walter N. Kosch and Walter T. Kosch expressed interest in the Austrian development project, they focused their continued discussions with Neubacher to the plans of the Sonnenschein Groupe to engage in acquisitions in Galena, Illinois ("Galena"), Sint Maarten, Netherland Antilles ("St. Maarten") and other real estate development projects in Costa Rica ("Costa Rica").

28. Although Neubacher was primarily interested in establishing a joint venture between FFIC, Neubacher and the Sonnenschein Groupe for purposes of the Austria development, he also represented to Walter N. Kosch and Walter T. Kosch that he knew that FFIC, Fields and their related companies were interested in providing a bond issuance, financing and capital funds for the purposes of the acquisitions of Galena, St. Maarten and Costa Rica, that Sonnenschein Groupe had under consideration.

29. Two days later Neubacher forwarded to Walter N. Kosch and Walter T. Kosch a sample engagement letter outlining the capital raising project of FFIC for Ray Allen, Inc. a Chicago area Software Company.

4

30. On January 30, 2007 Walter N. Kosch, Walter T. Kosch, and Neubacher met in Oakbrook Terrace, Illinois. At the meeting, the Austria development and the Galena, St. Maarten and Costa Rica acquisitions were discussed.

31. On February 8, 2007, Fields, Neubacher, Walter T. Kosch, Walter N. Kosch,   and   met at Oakbrook Terrace, Illinois.   At the meeting the parties discussed at length the prospect of FFIC entering into a joint venture ("Joint Venture") with the Sonnenschein Groupe for the purposes of the acquisition and development of the Galena, St. Maarten and Costa Rica projects.  Specifically, Fields and Neubacher represented to Walter N. Kosch, Walter T. Kosch,   and  :

    a.  Fields was the Managing Director of FFIC;

    b.  Neubacher was the agent of FFIC and Fields;

    c.  FFIC was a Philippine corporation with operating offices at 3rd Floor, EASCO Building, 2654 Leveriza St. Malate, Manila, Philippines; 45 Park Place South, Suite 279, Morris Town, New Jersey, 07960; and 4000 Massachusetts Northwest, Suite 625, Washington, District of Columbia, 20003;

    d.  Fields and Neubacher represented that FFIC was engaged in the business of providing and/or securing structured financing, money management, fund management, bond offerings and insurance underwriting for approximately ten (10) years;

    e.  FFIC and Fields were interested in providing a bond issuance and related financing in the gross amount of 170 million dollars US for the Koschs' and the Sonnenschein Groupe to acquire and develop the Galena, St. Maarten and Costa Rica;

    f.  Fields and Neubacher stated that the organizational vehicles would be a joint venture between FFIC and the Koschs' and the Sonnenschein Group with the Joint Venture being in a Luxembourg limited liability company with Koschs' and the Sonnenschein Groupe owning fifty one (51) percent of the Joint Venture entity and FFIC owning forty nine (49%) percent of the Joint Venture entity;

    g.  Fields and Neubacher further represented that FFIC would form a joint venture entity company that would issue bonds for purposes of the capital raise and the

170 million in USD raised from the bond offering and sale, less FFIC expenses would be transferred to the Joint Venture;

h.  Fields and Neubacher represented that FFIC and Fields would be responsible for obtaining the financing and/or capital raise and the Koschs' and the Sonnenschein Groupe would be responsible for all development, construction and operation;

i.  The Koschs' and the Sonnenschein Groupe would provide Eight Hundred Fifty Thousand and 00/100 Dollars US to FFIC for the initial costs of the bond offering;

j.  FFIC would provide Koschs' and the Sonnenschein Group with a promissory note in the amount of Eight Hundred Fifty Thousand and 00/100 Dollars US payable after the bonds are issued, along with a errors and omissions bond and a fidelity bond; and

k.  After a period of not more than five (5) years from each project completion, FFIC would sell its ownership in the Joint Venture.

32. On February 9, 2007, Neubacher e-mailed Walter N. Kosch and Walter T. Kosch listing information that FFIC and Fields needed to move forward with the business opportunities discussed. Within a reasonable period of time following Neubacher's e-mail and to the extent the requests were applicable, Walter N. Kosch, Walter T. Kosch, provided the information to Neubacher, FFIC and Field . See Exhibit A which is a copy of the February 9, 2007 e-mail of Neubacher with information request attached.

33. On February 20, 2007, Neubacher e-mailed Walter N. Kosch, Walter T. Kosch and Fields with the particulars for the formation of a Luxembourg limited liability company.

34. On February 21, 2007, Walter N. Kosch and Walter T. Kosch advised Neubacher and Fields that they and the Sonnenschein Group was not interested in developing the Austrian project but was interested in pursuing the Galena, St. Maarten and Costa Rica projects with Neubacher, Fields and FFIC. See Exhibit B which is a copy of the e-mail from Neubacher to Walter N. Kosch and Walter T. Kosch.

35. On February 26, 2007, Neubacher e-mailed Walter N. Kosch and Walter T. Kosch an updated Memorandum of Understanding. See Exhibit C which is a copy of the foregoing e-mail and draft memorandum of understanding.

36. On March 2, 2007, Neubacher, Fields and Walter T. Kosch had a telephone conference discussion concerning utilizing an escrow for the contemplated transactions and later that same day, Neubacher e-mailed Kosch a diagram of the contemplated structure of the transactions. See Exhibit D which is a copy of the foregoing e-mail and diagram.

37. On March 6, 2007, Plaintiffs learned from Neubacher that in addition to the Ray Allen, Inc. transaction, and the Galena, St. Maarten and Costa Rica projects, FFIC, Fields and Neubacher were arranging additional transactions in Detroit, Michigan and in Gary, Indiana.

38. On March 26, 2007, via e-mail, Fields projected and Neubacher forwarded to the Koschs' and the Sonnenschein Groupe projected costs of acquisition of: the Costa Rica development at 27.5 million dollars US; the Sint Maarten project at 12 million dollars US and the Galena project at 11 million dollars US. These projections were based upon discussions from an earlier meeting. The same e-mails projected the following expenses:

> "-$850,000 Initial offering costs returned to Walter Kosch (Lawyers, Accountants, Professional Liability Insurance, Ratings, Filings, Printings, and Underwriting)
> -$400,000 x 3 Projects budget Feasibility studies
> -$5,000,000 Acquisition Down payment budget for all three projects
> -$1,000,000 Interest reserve on Bond Offering
> -$1,000,000 Profession Fees
> -$3,500,000 Initial Fee Second Bond Offering Budget"

See Exhibit E attached which is a copy of a March 26, 2007 e-mail from Neubacher to Kosch and a March 26, 2007 e-mail from Fields to Neubacher.

39. On April 3, 2007, Fields, Neubacher, Walter N. Kosch and Walter T. Kosch met in Oakbrook Terrace to discuss the contemplated Joint Venture Agreement.

40. After an additional series of conversations, e-mails and communications between Fields, Walter N. Kosch, Walter T. Kosch and Neubacher, on April 26, 2007, a Letter of Engagement was signed by Walter N. Kosch on behalf of Sonnenschein Groupe and/or its nominee, Robert A. Fields on behalf of FFIC and individually and Neubacher, individually. See Exhibit F which is a copy of the executed Letter of Engagement between the Sonnenschein Groupe and/or its nominee and FFIC and/or its nominee.

41. After an additional series of conversations, e-mails and communications between Fields, Walter N. Kosch, Walter T. Kosch and Neubacher, on May 12, 2007, a Joint Venture

Agreement was signed by Walter N. Kosch on behalf of Sonnenschein Groupe and/or its nominee, Robert A. Fields on behalf of FFIC and individually and Neubacher, individually. See Exhibit G which is a copy of the executed Joint Venture Agreement between the Sonnenschein Groupe and FFIC.

42. On May 12, 2007, simultaneous to the signing of the Joint Venture Agreement, FFIC delivered a promissory note to Walter T. Kosch in the principal amount of Eight Hundred Fifty Thousand and 00/100 ($850,000.00)

43. On April 9, 2007, Walter T. Kosch via e-mail to Fields and Neubacher, requested and received copies of the insurance binders for the errors and omissions coverage and fidelity bond coverage for FFIC. See Exhibit H which is a copy of the April 9, 2007, Kosch e-mail and Neubacher's e-mail response with attachments.

44. On April 21, 2007, Prelu Autojay, an officer and director of FFIC, e-mailed Fields and Neubacher with a time frame for funding of the Bond offerings for February of 2008. See Exhibit I attached hereto.

45. Coincidentally, at this time Fields communicates with Walter N. Kosch and Walter T. Kosch representing that he has a lender in Detroit that will finance the Galena, St. Maarten and Costa Rica projects. On April 26, 2007 at a meeting with Walter T. Kosch, Walter N. Kosch, Neubacher and Fields, Fields represents that he has the necessary financing for the acquisition of the Galena, St. Maarten and Costa Rica Projects.

46. Coincidentally, Neubacher and Field represented to Koschs' and the Sonnenschein Groupe that as of April 2, 2007, Fields was appointed as a director to Metropolitan Financial Services a subsidiary or affiliate of Allied Mortgage Group. These representations proved later to be false.

47. On May 4, 2007, Ransom, Allied and Metropolitan represented to Koschs' and the Sonnenschein Group that Allied and Metropolitan would provide mortgage financing for acquisition of the Galena and Sint Maarten projects and issued commitment letters in the amount of $12,000,000.00 for the Galena project, and $ 14,000,000 for the St. Maarten project. These representations were false.

48. At all times relevant to the matters alleged in this Complaint, Fields, Neubacher and FFIC represented to Walter N. Kosch, Walter T. Kosch, and the Sonnenschein Groupe, that Fields and FFIC would unequivocally and without predicate, condition or qualification

8

provide the necessary capital for the acquisition and development of the Galena project, the Sint Maarten project, and the Costa Rica project.

49. Under the terms of the Letter of Engagement, FFIC and Fields had an obligation to unequivocally and without predicate, condition or qualification provide the necessary capital for the acquisition and development of the Galena project, the Sint Maarten project, and the Costa Rica project.

50. Under the terms of the Joint Venture, Fields and FFIC had an obligation to unequivocally and without predicate, condition or qualification provide the necessary capital for the acquisition and development of the Galena project, the St. Maarten project, and the Costa Rica project.

51. On May 12, 2007 Walter T. Kosch and Fields traveled to Austria to meet with Neubacher and a German attorney, to organize the Luxembourg limited liability company consistent with the Joint Venture Agreement.

52. Walter N. Kosch, Walter T. Kosch and the Sonnenschein Groupe are and have been in compliance with all of the obligations of Koschs' and the Sonnenschein Groupe under the Letter of Engagement and the Joint Venture Agreement. Indeed, over $400,000 was paid to Fields and FFIC or expended pursuant to Fields and FFIC's request and in compliance with the terms of the Letter of Engagement and Joint Venture Agreement.

53. In reliance upon the representations of Fields and Neubacher that FFIC would provide the necessary capital with no predicate, condition or qualification, to acquire and develop the Galena and St. Maarten projects, Walter N. Kosch, Walter T. Kosch and the Sonnenschein Groupe commenced and engaged in serious negotiations with the owner of the Galena project real property and business operation and, because of the oral and written representations that FFIC had the financing and capital for the acquisition, did not include a mortgage contingency provision In the negotiations.

54. In reliance upon the contractual obligation of Fields and FFIC to provide the necessary capital with no predicate, condition or qualification, to acquire and develop the Galena and St. Maarten projects, Walter N. Kosch, Walter T. Kosch and the Sonnenschein Groupe commenced and engaged in serious negotiations with the owner of the Sint Maarten project real property and business operation.

9

55. At all times relevant to the matters alleged in this Complaint, Fields, FFIC and Neubacher were aware that the negotiations with the Galena project owners did not include a mortgage or financing contingency.

56. FFIC did not provide the funding for the Galena project.

57. FFIC refused to execute a purchase agreement for the Galena project that did not include a mortgage or financing contingency provision.

58. The Galena project real property and business operation owners refused to renegotiate the terms to include a mortgage or financing contingency provision because the terms were originally negotiated not to include a mortgage or financing contingency.

59. But for the representations of FFIC, Fields and Neubacher, Walter T. Kosch, Walter N. Kosch and the Sonnenschein Group would have included a mortgage or financing contingency in the negotiations with the owners of the Galena project real property and business operation.

60. The Galena project, the Sint Maarten project and the Costa Rican project were lost as a result of the actions and conduct of the Defendants and in particular the actors, Fields, Neubacher, FFIC, Allied, Metropolitan and Ransom.

## COUNT I
## BREACH OF CONTRACT AGAINST FFIC AND FIELDS

61. The allegations contained in paragraphs 1-60 are realleged and incorporated herein as a part of this Count I.

62. FFIC and Fields had an unequivocal obligation under the Letter of Engagement and the Joint Venture Agreement to provide the funding for the purchase of the real property and business operations of the Galena project, the Sint Maarten project and the Costa Rican project.

63. FFIC and Fields failed and refused to provide the funding for the purchase of the real property and business operations of the Galena project, the Sint Maarten project and the Costa Rican project.

64. Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group have performed all material obligations under the Letter of Engagement and the Joint Venture Agreement.

65. FFIC and Fields are in breach of their obligations under the Letter of Engagement and the Joint Venture Agreement.

66. As a result of the breach of contract by FFIC and Fields, Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group have suffered actual damage and harm reasonably flowing from the breach, which includes the following non-exhaustive list of damages:

   a. As a direct result of the breach of contract, the Koschs' and Sonnenschein Group has lost the opportunity to purchase in conjunction with the Joint Venture the Galena real property and business operations comprising the Galena project;

   b. As a direct result of the breach of contract, the Koschs' and Sonnenschein Group has lost the opportunity to purchase in conjunction with the Joint Venture the Sint Maarten real property and business operations comprising the Sint Maarten project;

   c. As a direct result of the breach of contract, the Koschs' and Sonnenschein Group has lost the opportunity to purchase in conjunction with the Joint Venture the Costa Rican real property and business operations comprising the Costa Rican project;

   d. As a direct result of the breach of contract, the Koschs' and Sonnenschein Group has expended sums in excess of $400,000, including monies in the amount of $94,758.67 for the premiums for the errors and omissions and fidelity coverage; and $155,595.67 paid directly to FFIC; and other sums.

WHEREFORE, Walter N. Kosch, Walter T. Kosch, and the Sonnenschein Groupe pray for the entry of judgment in their favor and against Fields and FFIC in the amount of actual damages proven and cost.

## COUNT II
### FRAUDULENT MISREPRESENTATION AGAINST FIELDS, NEUBACHER, FFIC, FFIC NEW JERSEY, FFIC WASHINGTON, DC THE DIRECTORS OF FFIC, ALLIED, METROPOLITAN AND RANSOM

67. The allegations contained in paragraphs 1-60 are realleged and incorporated herein as a part of this Count II.

11

68. At all times relevant to the matters alleged in this Complaint, Fields, as Managing Director of FFIC, had the real and apparent power and authority to act in his own right and to act on behalf of FFIC, FFIC New Jersey and FFIC Washington DC.

69. At all times relevant to the matters alleged in this Complaint, Neubacher, as agent of FFIC had the real and apparent power and authority to act in his own right and to act on behalf of FFIC.

70. At all times relevant to the matters alleged in this Complaint, the Directors of FFIC were fully aware and approved of the wrongful actions of Fields, individually and as Managing Director of FFIC, and accordingly, the directors and each of them are accountable for the wrongful actions of Fields.

71. At all times relevant to the matters alleged in this Complaint, Ransom, as president of Allied and Metropolitan, had the real and apparent power and authority to act in his own right and to act on behalf of Allied and Metropolitan.

72. Fields, with the assistance of Neubacher, Allied, Metropolitan, Ransom, and with the knowledge and consent of FFIC and the Directors of FFIC, engaged in a scheme to defraud Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group, of money and other things of value by representing that FFIC and Fields via bond issuance and/or mortgage loans from Allied and Metropolitan, will provide capital funding and money.

73. Fields, with the assistance of Neubacher, Allied, Metropolitan, Ransom, and with the knowledge and consent of FFIC and the Directors of FFIC, represented to Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group that FFIC and Fields would provide capital funding and money through financing via bond issuance and/or mortgage loans from Allied and Metropolitan in return for Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group providing Fields and FFIC $850,000 in money or other things of value.

74. Fields, with the assistance of Neubacher, and with the knowledge and consent of FFIC and the Directors of FFIC, represented to Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group that FFIC had business offices in Morris Town, New Jersey and Washington DC. These representations were false in that separate corporations which were wholly owned subsidiaries of FFIC were organized and active in New Jersey and Washington DC. For purposes of the Complaint and the matters alleged herein, FFIC,

FFIC New Jersey and FFIC Washington DC should be treated and one entity and not three separate entities.

75. Allied, Metropolitan and Ransom represented to Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group directly and through their paramours, Fields and Neubacher, that Allied and Metropolitan would provide mortgage financing for acquisition of the Galena and Sint Maarten projects and issued commitment letters in the amount of $12,000,000.00 for the Galena project, and $ 14,000,000 for the St. Maarten project. These representations and the commitment letter were false and fabrications.

76. The representations of Fields and Neubacher were material in that Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group, needed capital funding to acquire and develop the Galena project, the St. Maarten project and the Costa Rican project.

77. The representations of Ransom, Allied and Metropolitan were material in that Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group, needed capital funding to acquire and develop the Galena project and the St. Maarten project.

78. At the time Fields and Neubacher made the representations to Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group the representations were false and Fields and Neubacher knew the representations were false.

79. At the time Ransom, Allied and Metropolitan, made the representations to Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group the representations were false and Ransom, Allied, and Metropolitan knew the representations were false.

80. Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group reasonably rely on the truth of the representations of Fields and Neubacher.

81. Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group reasonably rely on the truth of the representations of Ransom, Allied and Metropolitan.

82. In reliance upon the false representations of Fields, Neubacher, FFIC, Ransom, Allied and Metropolitan, Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group paid Fields and FFIC or expended funds as requested by Fields and FFIC, in excess of $400,000.00.

83. In further reliance upon the false representations of Fields, Neubacher, FFIC, Ransom, Allied and Metropolitan, Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group

negotiated purchase terms for the Galena project real estate and business operation that did not include a mortgage or financing contingency.

84. But for the representations of the Defendants that Fields and FFIC would, without predicate, condition or qualification, provide capital funding for the subject projects, including the Galena project, Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group would have included a mortgage or financing contingency in the negotiated terms.

85. But for the representations of the Defendants that Fields and FFIC would, without predicate, condition or qualification, provide capital funding for the subject projects, been able to procure acquisition of the Sint Maarten and Costa Rican projects.

86. At all times relevant herein, Fields and Neubacher were aware that Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group were negotiating the Galena project terms without the inclusion of a mortgage or financing contingency.

87. Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group relied upon the false representations of Fields, Neubacher, FFIC, Ransom, Allied and Metropolitan and were injured and suffer harm and damage as a result of the false representations and reasonable reliance thereof.

88. As a result of the false representations and reliance thereof, Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group have suffered actual damage and harm including:

    a. the lost opportunity to purchase the Galena real property and business operations comprising the Galena project;

    b. the lost opportunity to purchase the Sint Maarten real property and business operations comprising the Sint Maarten project;

    c. the lost opportunity to purchase the Costa Rican real property and business operations comprising the Costa Rican project;

    d. the loss of sums in excess of $400,000;

    e. With respect to the trust, the loss of the monies withdrawn and paid directly to FFIC or expended;

    f. and other sums.

89. FFIC and its directors where fully aware of and consented to the wrongful and false representations of Fields and Neubacher and accordingly and accountable and liable for

the damage and harm suffered by Walter N. Kosch, Walter T. Kosch, , , the Sonnenschein Group and the Trust.

90. Because the wrongful conduct of Fields, Neubacher, FFIC, Ransom, Allied and Metropolitan was deliberate and intentionally wrongful and malicious punitive damages are appropriate.

WHEREFORE, the Sonnenschein Group, Walter N. Kosch and Walter T. Kosch, pray for the entry of judgment in their favor and against Fields, Neubacher, FFIC, FFIC New Jersey, FFIC Washington DC, the individual defendant directors of FFIC, Ransom, Allied and Metropolitan:

   A. In the amount of actual damages of $400,000 for the sums paid or expended as proven;

   B. In the amount of actual damages of $12,000,000 or the actual loss value of the lost business profits opportunity and lost fair market value appreciation, and profit from the contemplated development of the Galena project;

   C. In the amount of actual damages of $11,000,000 or the actual loss value of the lost business profits opportunity and lost fair market value appreciation, and profit from the contemplated development of the Costa Rican project;

   D. In the amount of actual damages of $27,500,000 or the actual loss value of the lost business profits opportunity and lost fair market value appreciation, and profit from the contemplated development of the Sint Maarten project;

   E. Punitive damages shown to be appropriate;

   F. Attorney fees and costs.

## COUNT III
## CONSTRUCTIVE FRAUD AGAINST FFIC, FFIC NEW JERSEY AND FFIC WASHINGTON

91. The allegations contained in paragraphs 1-60 and paragraphs 67-90 are realleged and incorporated herein as a part of this Count III.

92. As a result of the Joint Venture agreement executed by FFIC and the Sonnenschein Group, a joint venture relationship existed between Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group.

15

93. As a result of the joint venture relationship, a fiduciary relationship of confidence and trust existed between FFIC and Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group and FFIC and its agents, representatives and Managing Director had a duty to be truthful and not to be deceptive and not to make false representations to Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group.

94. FFIC and Fields breached the fiduciary duty that FFIC had to Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group as a result of the false representations made to Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group.

95. Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group suffered injury, damage and harm as a result of the constructive fraud perpetrated on them by Fields, FFIC, FFIC NEW JERSEY and FFIC Washington DC.

WHEREFORE, the Sonnenschein Group, Walter N. Kosch and Walter T. Kosch pray for the entry of judgment in their favor and against Fields, FFIC, FFIC NEW JERSEY and FFIC Washington DC:

A. In the amount of actual damages of $400,000 for the sums paid or expended as proven;

B. In the amount of actual damages of $12,000,000 or the actual loss value of the lost business profits opportunity and lost fair market value appreciation, and profit from the contemplated development of the Galena project.

C. In the amount of actual damages of $11,000,000 or the actual loss value of the lost business profits opportunity and lost fair market value appreciation, and profit from the contemplated development of the Costa Rican project;

D. In the amount of actual damages of $27,500,000 or the actual loss value of the lost business profits opportunity and lost fair market value appreciation, and profit from the contemplated development of the Sint Maarten project;

E. Punitive damages shown to be appropriate;

F. Attorney fees and costs.

## COUNT IV
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST FFIC, FIELDS, NEUBACHER, FFIC NEW JERSEY, FFIC WASHINGTON DC AND THE DIRECTORS OF FFIC, RANSOM, ALLIED AND METROPOLITAN

96. The allegations contained in paragraphs 1-60 are realleged and incorporated herein as a part of this Count IV.

97. Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group had a reasonable expectation of entering into a valid business relationship with the owners of the Galena project real estate and business operations.

98. Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group had a reasonable expectation of entering into a valid business relationship with the owners of the Sint Maarten project real estate and business operations.

99. Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group had a reasonable expectation of entering into a valid business relationship with the owners of the Costa Rican project real estate and business operations.

100. Fields, Neubacher, FFIC, Ransom, Allied and Metropolitan, knew of the reasonable expectation on the part of Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group.

101. Fields, Neubacher, FFIC, Ransom, Allied and Metropolitan by their wrongful conduct purposefully interfered with the reasonable expectation of Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group and prevented Walter N. Kosch, Walter T. Kosch and the Sonnenschein Grouper's reasonable expectancy from being fulfilled.

102. As a result of the unlawful and unjustified tortuous interference by Fields, Neubacher, FFIC, Ransom, Allied and Metropolitan, Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group suffered injury and damages.

WHEREFORE, the Sonnenschein Group, Walter N. Kosch and Walter T. Kosch pray for the entry of judgment in their favor and against Fields, Neubacher and FFIC, FFIC New Jersey, FFIC Washington DC and the individual directors of FFIC, Ransom, Allied and Metropolitan:

A. In the amount of actual damages of $400,000 for the sums paid or expended as proven;

B.  In the amount of actual damages of $12,000,000 or the actual loss value of the lost business profits opportunity and lost fair market value appreciation, and profit from the contemplated development of the Galena project;

C.  In the amount of actual damages of $11,000,000 or the actual loss value of the lost business profits opportunity and lost fair market value appreciation, and profit from the contemplated development of the Costa Rican project;

D.  In the amount of actual damages of $27,500,000 or the actual loss value of the lost business profits opportunity and lost fair market value appreciation, and profit from the contemplated development of the Sint Maarten project;

E.  Punitive damages shown to be appropriate; and

F.  Attorney fees and costs.

## COUNT V
### CIVIL CONSPIRACY AGAINST FFIC, FIELDS, NEUBACHER, FFIC NEW JERSEY, FFIC WASHINGTON DC AND THE DIRECTORS OF FFIC, Ransom, Allied and Metropolitan

103.    The allegations contained in paragraphs 1-60 and 67-102 are realleged and incorporated herein as a part of this Count V.

104.    Fields, Neubacher and FFIC including the individual directors of FFIC engaged and participated in a civil conspiracy.

105.    In particular, Fields, Neubacher, FFIC and the individual director defendants of FFIC entered into a combination for the purpose of accomplishing by their concerted action an unlawful purpose or a lawful purpose by unlawful means.

106.    The false representations made by Fields and Neubacher to Walter N. Kosch, Walter T. Kosch, , and the Sonnenschein Group are actions in the furtherance of the civil conspiracy the goal of which was to defraud Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group of money and other things of value.

WHEREFORE, the Sonnenschein Group, Walter N. Kosch and Walter T. Kosch pray for the entry of judgment in their favor and against Fields, Neubacher and FFIC, FFIC New Jersey, FFIC Washington DC and the individual directors of FFIC, Ransom, Allied and Metropolitan:

A. In the amount of actual damages of $400,000 for the sums paid or expended as proven;

B. In the amount of actual damages of $12,000,000 or the actual loss value of the lost business profits opportunity and lost fair market value appreciation, and profit from the contemplated development of the Galena project;

C. In the amount of actual damages of $11,000,000 or the actual loss value of the lost business profits opportunity and lost fair market value appreciation, and profit from the contemplated development of the Costa Rican project;

D. In the amount of actual damages of $27,500,000 or the actual loss value of the lost business profits opportunity and lost fair market value appreciation, and profit from the contemplated development of the Sint Maarten project;

E. Punitive damages shown to be appropriate; and

F. Attorney fees and costs.

## COUNT VI
## RACKETEERING INFLUENCE CORRUPT ORGANIZATION ("RICO")

107.    The allegations contained in paragraphs 1-60 and paragraphs 67-106 are realleged and incorporated herein as a part of this Count VI.

108.    As previously alleged, Fields, Neubacher, FFIC and the individual directors of FFIC engaged in a scheme or artifice to defraud individuals, including Walter N. Kosch, Walter T. Kosch and the Sonnenschein Group out of money and other things of value.

109.    The aforesaid defendants used the mails, the wire, telephone and internet to effectuate and execute upon their scheme and artifice to defraud individuals of money and things of value and the foregoing constituted acts which include mail fraud as that term is defined by the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. §§ 1961-1968.

110.    The aforesaid defendants engaged in a pattern of racketeering activity which include the acts complained of by the Plaintiffs and similar activity with respect to:

    a.    A Chicago area Software Company;

    b.    Companies in Detroit, Michigan and Gary, Indiana.

111.    The foregoing racketeering activities constitute a pattern of racketeering predicates that are related, in that the same or virtually the same scheme and artifice were employed by the Defendants in each instance.

112.    The foregoing predicate racketeering activities demonstrate a continuity of criminal and civil unlawful activity having occurred at different points in time and involving different victims.

113.    As a result of the Defendants violation of the statutory prohibitions of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. §§ 1961-1968, Plaintiff have been injured and suffered harm and damage.

WHEREFORE, the Sonnenschein Group, Walter N. Kosch and Walter T. Kosch pray for the entry of judgment in their favor and against Fields, Neubacher and FFIC, FFIC New Jersey, FFIC Washington DC and the individual directors of FFIC, Ransom, Allied and Metropolitan:

A.  In the amount of actual damages of $400,000 for the sums paid or expended as proven;

B.  In the amount of actual damages of $12,000,000 or the actual loss value of the lost business profits opportunity and lost fair market value appreciation, and profit from the contemplated development of the Galena project;

C.  In the amount of actual damages of $11,000,000 or the actual loss value of the lost business profits opportunity and lost fair market value appreciation, and profit from the contemplated development of the Costa Rican project;

D.  In the amount of actual damages of $27,500,000 or the actual loss value of the lost business profits opportunity and lost fair market value appreciation, and profit from the contemplated development of the Sint Maarten project;

E.  Punitive damages shown to be appropriate; and

F.  Treble damages; and

G.  Injunction to prevent further violations; and

H.  Attorney fees and costs.

SONNENSCHEIN GROUPE, WALTER N.
KOSCH and WALTER T. KOSCH,
Plaintiffs,

By:

_____
One of Their Attorneys

Michael Lee Tinaglia
Law Offices of Michael Lee Tinaglia, Ltd.
9700 W. Higgins Road - Suite 1015
Rosemont, Illinois 60018
(847) 692-0421 (847) 685-8440 Fax
ARDC No.2835886
Cook County No.22869
mltinaglia@tinaglialaw.com

# VERIFICATION BY CERTIFICATION

Under penalties as provided by law pursuant to Chapter 735 ILCS Section 5/1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

The undersigned further certifies that he is a principal of the Sonnenschein Groupe, a defacto limited liability company doing business in the state of Illinois.

Dated: December 18, 2007.

By: _Walter N. Kosch_

Walter N. Kosch
The Sonnenschein Groupe

22

**Walter T Kosch**

| | |
|---|---|
| **From:** | karl neubacher [startech_ag@yahoo.com] |
| **Sent:** | Friday, February 09, 2007 2:52 PM |
| **To:** | Walter N. Kosch; Walter T. Kosch |
| **Subject:** | List of documents |
| **Attachments:** | FFIC_BEAM documents needed.pdf |

Dear Gentleman,

attached is the letter from Robert regarding the standard information needed for the engagement as discussed yesterday.

best regards
Karl

--
No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.5.441 / Virus Database: 268.17.37/682 - Release Date: 2/12/2007 1:23 PM


**EXHIBIT**
**A**

9/5/2007



www.fficbeam.com

**FFIC/BEAM**
INCORPORATED

To whom it may concern:

Gentleman,

   We, FFIC Beam, Inc., herein issue this document to verify our Letter of Intent (LOI) to assist you in your Project; with a fully guaranteed (credit and political  risk insured) Bond Offering that will  undertake the Project. The offering process will be started after we have signed a joint venture agreement where we defined a clear understanding of the project at this point. The Bond Offering will be subject to the presentation of all official documents and contracts.

In order to provide you with our comprehensive financial service in relation to the bond offering we need the following Preliminary Set of Information from your Company
(The listing detailed below took into account the initial set of information materials and documents normally required by financial advisors in completing the financial advisory engagement. Additional information will be requested as the engagement progresses.)

   - Articles of Incorporation and By-laws
   - List of current shareholders and all option holders, warrant holders and holders of securities convertible into capital stock
   - Organizational chart
   - List of all corporations, partnerships, associations, joint ventures and other business entities in which the company owns , directly or indirectly, an interest or any shares of capital stock
   - Audited financial statement for the last three years (2003 – 2005)
   - Latest unaudited financial statement for the year 2006
   - Credit reports
   - Management letter for the latest completed external audit (i.e., December 31, 2005)
   - Minutes of meetings of stockholders and Board of Directors for the past three years
   - Existing major contracts which may have financial and tax implications (e.g. financial and investment management agreement, loan agreements, lease agreements, supply and/or marketing contracts)
   - Independent appraisal reports on fixed assets
   - Insurance policies
   - Collective Bargaining agreement, if any
   - Latest financial statement in retirement fund, if any
   - Representation letter from Company's in-house and external legal counsels on the existence, status and likely outcome of any depending litigations, claims and assessments against the company
   - Business plan of the company for the next 5 years, together with the financial projections which shall be consisting of balance sheets, statements of income and retained earnings, and statements of cash flow and the summaries of significant assumptions and accounting policies covering at least 5 years of operations (2007 -2011)
   - Marketing plan, Trend information
   - Administrative, management and supervisory bodies
   - Documents on display

Our engagement consists the preparation of the prospectus threw external services (KPMG) for the issuance of dept securities

Very truly yours,

Robert A. Fields
Managing Director

**US Main**
45 park Place South Suite 279,
Morris Town, NJ 07960

**Manila Office**
3rd Floor, EASCO Building
2654 Leveriza St. Malate Manila

**Washington Office**
4000 Massachusetts Northwest
Suite 625 Washington DC 20003



www.fficbeam.com

**US Main**
45 park Place South Suite 279,
Morris Town, NJ 07960

**Manila Office**
3rd Floor, EASCO Building
2654 Leveriza St. Malate Manila

**Washington Office**
4000 Massachusetts Northwest
Suite 625 Washington DC 20003

**Walter T Kosch**

| | |
|---|---|
| **From:** | karl neubacher [startech_ag@yahoo.com] |
| **Sent:** | Wednesday, February 21, 2007 11:36 AM |
| **To:** | Walter N. Kosch; Walter T. Kosch |
| **Subject:** | Offering |

Hi Walter,

as I have learned from our conversation a few minutes ago is that you are not interested in my Austrian project and that you like to do the deal with Robert only for your own projects.

This is fine for me, as long I get a commission paid for the funding of your projects, usually I get paid 3 to 5% from the money what is received.

the initial cost of USD 850,000.00 are refundable by FFICBEAM, Inc. after the Bonds are issued.
the 1. payment out of the offering is to refund of the USD 850,000.00 as part of the offering cost.
to secure the clients USD 850,000.00, FFICBEAM, Inc. issue a 12 Month Note for USD 850,000.00

to underline the Note, FFICBEAM buy a professional liability for Fidelity and E&O with the clients insured interest. The Fidelity Bond and the E&O policy are issued by AA rated US insurance companies.
FFICBEAM, Inc. is already approved by the insurance companies, the bond and the policy can be issued any time. FFICBEAM need to name only the insured interest and do the down payment on the premiums.

Mr Fields is prepared to issue the documentation on his professional liability on your attorneys written request.

best regards
Karl

--
No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.5.441 / Virus Database: 268.18.3/694 - Release Date: 2/20/2007 1:44 PM



9/5/2007

**Walter T Kosch**

| | |
|---|---|
| **From:** | karl neubacher [startech_ag@yahoo.com] |
| **Sent:** | Monday, February 26, 2007 11:18 AM |
| **To:** | Walter N. Kosch; Walter T. Kosch; Robert Pioso |
| **Subject:** | Update Memorandum |
| **Attachments:** | Memorandum of Understanding - Kosch.doc |

Hello,

please find attached the updated Memorandum of Understanding.

Karl


--
No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.5.446 / Virus Database: 268.18.4/703 - Release Date: 2/26/2007 2:56 PM

**EXHIBIT**
C

# Memorandum of Understanding

Between

**The Sonnenschein Groupe**
Mr. Walter Kosch
Two TransAm Plaza Dr.
Suite 300
Oakbrook Terrace, IL 60181

**(Client)**

And

**FFICBEAM, Incorporated**
Mr. Robert Fields
45 Park Place,
Suite 279
Morris Town, NJ 07960

**(Investor)**

Subject: JV between Client & Investor 75/25 (profit only)

1) The parties agree to form a Luxembourg JV Holding company for the acquisition/ development/ refurbishment of Commercial Real Estate in the United States and the Caribbean (St. Marten and Costa Rica),
2) The Client provides the Management and his experience as a Developer, Tourism Management Company (Hotel & Time share) and in Marketing.
3) The Investor provides the funding (USD 85 million) through the bonds offering for the said JV.
4) The client provides the funding for initial cost (USD 850,000.00)for the bonds offering,
5) The Investor provides the Client with a 12 Month Note for USD 850,000.00 in combination with a fidelity bond and a E&O policy for the amount received,

Timetable:

1) Tuesday, February 27, 2007 signing of the Memorandum of understanding
2) Friday, March 02, 2007 signing Letter of Engagement and deposit of USD 850,000.00 in Clients Escrow account.
3) March 02 to March 12
    - client provides project estimations and exit strategy for Galina and provides a concept paper for possible acquisition in St. Marten and Costa Rica.

- Attorneys preparing the JV agreement.
- Signing of the JV agreement.
- Investor provide Client with the Note of USD 850,000.00
- Registering JV in Luxemburg
- Investor acquires the Fidelity bond and the E&O policy with the insurable interest for the client. The down payment USD 37,000.00 (payout from the escrow) on the insurance must be made prior the policy is issued,
- Client transfer the funds from the escrow account to investors management account / chase account
- Investor pay Insurance and other service provider like attorneys, KPMG, Moody's etc,

4) after March 12, JV starts with the preparations for the prospectus and provides KPMG with following Documents:
  - Articles of Incorporation and By-laws
  - List of current shareholders and all option holders, warrant holders and holders of securities convertible into capital stock
  - Organizational chart
  - List of all corporations, partnerships, associations, joint ventures and other business entities in which the company owns , directly or indirectly, an interest or any shares of capital stock
  - Audited financial opening statement for the JV (2007)
  - Credit report on the JV
  - Management letter for the latest completed external opening audit (2007)
  - Minutes of meetings of stockholders and Board of Directors
  - Existing major contracts which may have financial and tax implications (e.g. financial and investment management agreement, loan agreements, lease agreements, supply and/or marketing contracts)
  - Independent appraisal reports on fixed assets (acquisitions of the JV)
  - Insurance policies
  - Business plan of the company for the next 5 years, together with the financial projections which shall be consisting of balance sheets, statements of income and retained earnings, and statements of cash flow and the summaries of significant assumptions and accounting policies covering at least 5 years of operations (2007 -2011)
  - Marketing plan, Trend information
  - Administrative, management and supervisory bodies
  - Management track record
  - Credit report on the Management

5) Investor will arrange the funding of said JV through rated bonds offering (A or AA) approximately five month, subject to all parties timely collaboration and documentation.
6) Investor will confirm said funding agreement with full corporate undertaking and guarantee.

7) Investor guarantee to pay back the initial cost of the offering (USD 850,000.00) to the client after the funding of said JV takes place but not later than 12 Month after issuing of Investors note.

8) Client transfer the Note and the insurance back to the Investor after receiving the USD 850,000.00 from the Investor.

February 23, 2007

_____

Walter N. Kosch (Sonnenschein Groupe)
**Client**

_____

Robert A Fields (FFICBEAM, Inc.)
**Investor**

# Walter T Kosch

| | |
|---|---|
| **From:** | karl neubacher [starlech_ag@yahoo.com] |
| **Sent:** | Friday, March 02, 2007 2:59 PM |
| **To:** | Walter T. Kosch |
| **Subject:** | Escrow Structure |
| **Attachments:** | Escrow Standard.pdf |

Hi Walter,

please find attached the concept of the escrow structure which we discussed today.

Karl

--
No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.5.446 / Virus Database: 268.18.5/707 - Release Date: 3/1/2007 2:43 PM

EXHIBIT
2

9/5/2007



**Walter T Kosch**

**From:**        karl neubacher [startech_ag@yahoo.com]
**Sent:**        Monday, March 26, 2007 4:53 PM
**To:**          Tom Lupina; Robert Pioso; Walter N. Kosch; Walter T. Kosch
**Subject:**     Fwd: [Fwd: Meeting Monday March 26,2007 St.Martin,Costa Rica Projects]
**Attachments:** Meeting Monday March 26,2007 St.Martin,Costa Rica Projects] (2.16 KB)


Note: forwarded message attached.


--
No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.5.446 / Virus Database: 268.18.20/737 - Release Date: 3/28/2007 4:23 PM

EXHIBIT
E

Walter T Kosch

**From:** raf@fficbeam.com
**Sent:** Monday, March 26, 2007 4:49 PM
**To:** startech_ag@yahoo.com
**Subject:** [Fwd: Meeting Monday March 26,2007 St.Martin,Costa Rica Projects]


------------------------- Original Message -------------------------
Subject: Meeting Monday March 26,2007 St.Martin,Costa Rica Projects
From:   raf@fficbeam.com
Date:   Mon, March 26, 2007 4:38 pm
To:
---------------------------------------------------------------------

Rob and Tom,

    Per our morning meeting we have gone over the possible costings for the proposed
resort projects in Costa Rica, St. Martin and touch on the Galena , Il resort.

1. Costa Rica (Resort Casino) Acquisition cost approx. 27.5 M USD
     Pre Tax operations 7.2 M USD

2. St. Martin (Resort ) Acquisition cost approx. 12.0 M USD
     Pre Tax operations 2.4 M USD
     Proposed Dev. Costs 7.0 M USD

3. Galena      (Resort ) Acquisition cost approx. 11.0 M USD
     Pre Tax operations 1.3 M USD

---

Breakdown of proposed budget for Pre-Stage:

A. 12.5 Million

  $ 850,000  Initial offering costs Returned to Walter Kosch( Lawyers, Accountants,
Professional Liability Insurance, Ratings , Filings, Printings, and Underwriting )

  $ 400,000 x 3 Projects budget Feasibility studies

  $ 5,000,000 Acqisition Down payment budget for all three projects

  $ 1,000,000 Interest reserve on Bond Offering

  $ 1,000,000 Profession Fees

  $ 3,500,000 Initial Fee Second Bond Offering Budget


The following cost are brought up for discussion purpose only.

Thanks

Robert



www.fficbeam.com

April.26, 2007

The Sonnenschein Groupe
Mr. Walter N. Kosch
Two TransAm Plaza Dr.
Suite 300
Oakbrook Terrace, IL 60181
USA

Email: wnkosch@sonnenscheingroupe.com
Rated Bond Offering USD $15,000,000.00 and a second
Rated Bond Offering up to USD $40,000,000.00
Beneficiary:  Joint Venture (hereinafter referred to as "JV") to be formed between
              "The Sonnenschein Groupe" and/or its nominee (hereinafter "Client) and
              "FFICBEAM, Incorporated." and/or its nominee (hereinafter "Investor")

## Letter of Engagement

Gentlemen,

We are pleased to inform you that we have been instructed by our investment management
Board to issue this Letter of Engagement to provide financing up to but not limited to Fifty
Five Million and 00/100 US Dollars ($55,000,000.00) (hereinafter "Financing") for the JV
for the purpose of funding the purchase, on going operation and construction of Client
projects in Galena, Illinois, United States, Sint Maarten, Netherlands Antilles and San Jose,
Costa Rica (hereinafter the United States project, the Sint. Maarten project and the Costa Rica
project shall collectively be referred to as "Project").

The initial cost to Client for the Financing is USD 850,000.00 (hereinafter "Client
Refundable Deposit") which shall be provided by Client in accordance with the following
schedule:



1.        Ninety Four Thousand Seven Hundred Fifty Eight and 66/100  US
          Dollars ($94,,758.66) for E&O Insurance and Crime/Fidelity Bond, the
          receipt of which is hereby acknowledged;

2.        One Hundred Fifty Five Thousand Five Hundred Ninety Five and
          67/100 US Dollars ($155,595.67) to be deposited with Investors at
          signing of the Joint Venture Agreement (as defined below), and to be
          used exclusively for the following purposes:

                    Initial costs and expenses associated with the Initial Bond
                    Offering and funding, including but not limited to, accounting
                    and auditing fees, insurance fees, legal fees, and rating agency
                    fees.



EXHIBIT
F

2

3.          Six    Hundred    Sixty                  Seven   Thousand   and
00/100 US Dollars ($667,000.00) in a Standby Letter of Credit issued
within 45 days after signing of the Joint Venture Agreement
irrevocable for a period of one year from the date of issue, for the
benefit of Investor to be used exclusively to raise additional capital for
the following purposes only: Initial costs and expenses associated with
the Initial Bond Offering and funding, including but not limited to,
accounting and auditing fees,, insurance fees, legal fees, and rating
agency fees.

The Financing shall be provided as follows:

A.     Robert Fields, in his individual capacity, shall secure within 90 days of the
date hereof purchase money mortgages for the Galena, Illinois, United States, San
Jose, Costa Rica and/or the St. Maarten, Netherlands Antilles projects in the amount
up to 80% Loan-To-Value for each of the individual projects contained within the
Project (hereinafter "Bridge Financing") at the lowest available interest rate not to
exceed 7.5% per annum and subject to customary lender requirements. To the extent
necessary and on an as needed basis, Client shall provide recent surveys, and
appraisals for the each individual project contained within the Project, and 2002 to
2006 compiled financial statements, or audited financial statements to the extent
available, and other reasonable documents requested concerning the operations of the
individual projects contained within the Project;

B.     Investor shall process and complete a rated bond offering in the amount of
Fifteen Million and 00/100 US Dollars ($15,000,000.00) (hereinafter "Initial Bond
Offering") to be placed and sold within 10 months of the date hereof;

C.     Investor shall process and complete a second rated bond offering in the
amount up to but not limited to Forty Million and 00/100 US Dollars
($40,000,000.00) (hereinafter "Second Bond Offering") to be placed and sold within
13 months of the date hereof.



The funds raised pursuant to the Bridge Financing shall be used for acquiring and additional
operating capital for the Project.

The funds raised pursuant to the sale of the Initial Bond Offering shall be used to reimburse
Client for the full amount of the Client Deposit, and customary expenses associated with the
Initial Bond Offering and funding, including but not limited to, accounting and auditing fees,
insurance fees, legal fees, and rating agency fees, and pre-development, construction and
marketing costs, architect fees, surveys, zoning, permits, licenses, and other related costs.

The funds raised pursuant to the sale of the Second Bond Offering shall be used to acquire,
construct and provide operating capital for the Project and/or for any of the individual
projects contained within the Project not previously acquired and/or built.

FFIC/BEAM Incorporated shall execute a promissory note (hereinafter "Promissory Note")
in substantially the same form as set forth in Exhibit A hereto and Robert A. Fields and Karl
Neubacher each shall, jointly and severally, fully and completely guarantee the payment of
the Promissory Note. The Promissory Note shall be collateral for the repayment to Client of
the Client Deposit. FFIC/BEAM, Incorporated shall provide Client with crime/fidelity

insurance coverage to insure against default of the Promissory Note. Said crime/fidelity insurance coverage shall provide coverage over any and all defaults under the terms of the Promissory Note, and shall have a maximum deductible of Two Hundred and Fifty Thousand and 00/100 US Dollars ($250,000.00).

4.    Warranties by Client:

    4.1 The Client represents and warrants that:

        4.1.1    It has taken or has had sufficient opportunity to review before entering into this Agreement; and

        4.1.2    The Deposit shall comprise of funds that are clean, clear and of non-criminal origin and are freely and legally available to it for the purposes of the transaction.

5.    Governing Law and Jurisdiction:

The Laws and Jurisdiction of the State of Illinois (USA) shall exclusively govern this Agreement. If any action is brought regarding this Agreement, such action shall be brought in a court of competent jurisdiction.

6.    Agreement regarding Joint Venture:

The parties will enter into a joint venture agreement within 14 business days after the execution of this Letter of Engagement.

The following provisions shall, among other terms ordinarily contained within similar joint venture agreements, be provided for in the agreement that structures the JV (hereinafter "Joint Venture Agreement"):

    a.    Client shall have the right to exit the JV anytime, provided all debts and obligations owed by the Client have been paid or provided for in full at the time the Client exercises its option to exit.

    b.    Interest, insurance premium, and principal payments on both the Initial Bond Offering and the Second Bond Offering shall be deferred for no more than 3 Years during the construction periods of the Project;

    c.    Interest on both the Initial Bond Offering and the Second Bond Offering will be calculated at the time of each offering at125-150 basis points (1.25% to 1.50%) above fixed rate of the then current United States 10-year Treasury Notes; (Example as of today the Interest is 6.25% per year for a Ten year period fixed).

4

d.    The    insurance    premium relating to the First and Second Offerings is the greater of 3% per annum of the total amount of JV proceeds used from the First and Second Offering or the aggregate funds raised..

e.    . The net profits and/or losses, property distributions, including cash and the share of all liabilities, including any recourse liabilities of the JV shall be allocated between the parties as follows:

51% to Client and 49% to Investor.

f. Each party to the Joint Venture shall be liable separately for their respective share of any tax liabilities due.

## SIGNATURES:

This Agreement has been signed by and on behalf of the parties on the 26th day of April 2007.


Signed by
For and on behalf of Client


Signed by:  Mr. Robert A Fields
For and on behalf of Investor


Signed by Mr. Robert A Fields
In personal Capacity


Signed by Mr. Karl Neubacher
In personal Capacity

5


www.fficbeam.com

April 26,2007
The Sonnenschein Groupe
Two Trans Am Plaza Dr.
Suite 300
Oakbrook Terrace, IL 60181
USA

Beneficiary:  Joint venture between The Sonnenschein Groupe and/or nominee and
              FFICBEAM and/or nominee.

Amount:       Up to USD 15,000,000.00


# FULL CORPORATE GUARANTEE

Gentlemen,

We hereby with full corporate responsibility guarantee to process the Financing set
forth in the attached Letter of Engagement ,subject to all parties' timely collaboration.

Pursuant to the final agreement, we confirm that this is a FULL CORPORATE
UNDERTAKING COMMITMENT from us. The credit rating of the said bond
offerings will be "A" or Double "-AA" rated and shall be quality bonds.

Illinois law and jurisdiction shall be applicable.

Sincerely,


*RobtField*
Authorized Signature

# JOINT VENTURE AGREEMENT

THIS JOINT VENTURE AGREEMENT ("Agreement"), made and entered into as of this ___ day of May, 2007 by and between The Sonnenschein Groupe, represented by Walter N. Kosch, of Two TransAm Plaza Dr., Suite 300, Oakbrook Terrace, Illinois 60181, an Illinois entity, USA ("Sonnenschein") and FFIC Beam, Incorporated, 45 Park Place, Suite 265, Morris Town, New Jersey 07960, a New Jersey corporation, USA ("FFIC"),

### WITNESSETH

IT IS AGREED AS FOLLOWS:

1. Consideration. The consideration for this agreement is the payment of the sum of Ten Dollars ($10.00 USD) each to the other party, and the mutual covenants and agreements herein.

2. Joint Venture Formation. Sonnenschein and FFIC agree to form a Luxembourg Joint Venture Holding Company (hereinafter "JV") for the purpose of providing acquisition, construction and operating funds for the JV to acquire and expand certain properties in the USA and Caribbean ( St. Maarten and Costa Rica).. The parties shall form a Luxembourg Limited Liability Company, the formation documents of which shall contain the provisions set forth below as well as those customarily set forth in companies of a similar nature. (Company Formation Documents)

3. Operations. Sonnenschein shall provide the operational experience as set forth herein in paragraph 2.

4. Financial Structure and Underwriting. FFIC shall be responsible for initiating and arranging the financial structure and underwriting in order to procure the funds required to achieve the objectives and purposes of the JV. FFIC shall provide its rating, reputation and credibility for the benefit of the JV.

5. Funding by parties. Sonnenschein shall provide the Client Refundable Deposit as that term is defined in the Letter of Engagement, attached hereto and incorporated herein as Exhibit A, of $850,000.00 USD for the purposes set forth in the Letter of Engagement. FFIC shall provide funding for the JV of up to $85,000,000.00 USD subject to feasibility studies to be provided by the parties with the assistance of KPMG. FFIC shall also provide Sonnenschein with a 12 month note payable to Sonnenschein for the sum of $850,000.00 USD (hereinafter "Promissory Note" a copy of the Promissory Note is attached hereto as Exhibit B) in combination with a criminal fidelity bond and an E&O professional liability insurance policy received from Sonnenschein by FFIC. Sonnenschein will be listed as an additional insured covering Sonnenschein's insurable interest on the criminal fidelity bond. Default by FFIC under the terms of the Promissory Note shall constitute a dishonest act. Client Refundable Deposit shall be refunded as set forth in the Letter of Engagement.


EXHIBIT
G

6. Understanding by parties. Sonnenschein and FFIC understand that the total initial cost to provide the funding for the JV is $850,000.00 USD. Sonnenschein shall provide the full amount of $850,000.00 USD for the purposes and as set forth in the Letter of Engagement. A guaranteed minimum amount of $850,000.00 USD shall be raised to establish the threshold level to allow Sonnenschein to be reimbursed for the Client Refundable Deposit.

7. Board of Directors. The JV shall include a Board of Directors. The initial number of directors that make up the Board of Directors shall be seven (7). Three (3) directors shall be appointed annually by Sonnenschein, three (3) directors shall be appointed annually by FFIC, and one (1) director shall be appointed annually by or on behalf of the insurance underwriters. The Board of Directors shall act in lieu of, and have control over, the Executive Council upon the occurrence of a material default that remains uncured after 120 days written notice to the JV, under any financing arrangement that the JV is a party to or debt that the JV owes.

8. Business Affairs. The business and affairs of the JV shall be managed by and be under the direction of an executive council (Executive Council). The initial number of members that make up the Executive Council shall be six (6) Three (3) members shall be appointed annually by Sonnenschein and three (3) members shall be appointed annually by FFIC. All actions and decisions not specifically delegated to the Board of Directors shall be made by the Executive Council and shall be binding upon the JV.



9. Sonnenschein Operations. Sonnenschein shall have full, exclusive and complete authority and discretion in identifying, managing, constructing, operating and controlling the Projects, including but not limited to, use of and disbursement of cash-flows generated by the JV, in accordance with the directives of the Board of Directors. Any action taken by Sonnenschein pursuant to this Section 9. shall constitute the act of, and serve to bind the JV. FFIC shall not participate in or have any control over this designated portion of the JV business nor shall it have any authority or right to act for or bind the JV in said matters.

10 FFIC Operations. FFIC shall have full, exclusive and complete authority and discretion in the management, disbursement and control of the raising of funds for bonds, offerings and insurance and shall make all decisions affecting said matters only in accordance with the directives of the Board of Directors. Any action taken by FFIC pursuant to this Section 10. shall constitute the act of, and serve to bind the JV. FFIC shall use its best efforts to carry out its responsibilities under this Section 10.

11. Business of the JV. Within the first 36 months of the Projects there shall be a moratorium on the payments of principal and interest. Sonnenschein shall own 51% of the equity of the JV and FFIC shall own 49% of the equity of the JV.

12. Security of Sonnenschein. Sonnenschein shall be secured in this Joint Venture by virtue of said Note and the identified insurance coverages issued by any reputable and sound US based insurance company having an A.M. Best rating of "A" or better.

13. Restrictions on transfer of interest. No transfer of interest of any kind shall be allowed unless all the provisions of this Agreement and the Company Formation Documents have been satisfied in full by the party seeking to transfer its interest including, but not limited to, any and all terms within the Company Formation Documents dealing with transfers of interest.

14. Exit Strategies. The Company Formation Documents shall set forth the rights and obligations of any party seeking to exit the JV. FFIC shall have the right to sell its interest in the JV to a third party only upon and subject to all of the following conditions:

    a.        That a minimum of 36 months have elapsed since the formation of the JV;

    b.        That FFIC provide Sonnenschein with a bona fide offer from a third party, and upon receipt of said bona fide offer, Sonnenschein shall have 120 days to exercise a first right of refusal to purchase the FFIC interest in the JV under substantially the same terms and conditions as set forth in the bona fide offer;

    c.        That FFIC has provided the full amount of the funding as required pursuant to Paragraph 5 herein;

    d.        That the sale of the FFIC interest in the JV shall not obligate the JV, or Sonnenschein, to any additional debt or obligations or encumber any property of the JV; and

    e.        Upon the sale of the FFIC interest in the JV to a third party the number of directors that make up the Board of Directors shall be modified so that there is a total number of directors of five (5), so that the directorship to be appointed annually by or on behalf of the insurance underwriters is extinguished and the third party purchaser of the FFIC interest in the JV shall only have the right to appoint two (2) directors, while Sonnenschein shall maintain its right to appoint three (3) directors, in addition, the number of members on the Executive Council shall be modified so that there is a total of five (5), Sonnenschein shall retain its right to appoint three (3) members and the third party purchaser of the FFIC interest in the JV shall only have the right to appoint two (2) members.

15. Allocation of profits and losses. Commencing on the date hereof and ending on the termination of the business of the JV, all profits, losses, liabilities and other allocations of the JV shall be allocated: Sonnenschein 51% and FFIC 49%.

16. Expenses. All allowable expenses, as agreed to in writing by the Board of Directors, advanced by either party and shall be reimbursed by the JV.

17. Compensation. Each of the parties shall be entitled to fair, equitable and reasonable compensation as agreed to in writing by the Board of Directors for utilizing its best efforts in performing all actual work required pursuant to this Agreement.

18. Default and Breach of Agreement. In the event of default and breach of this Agreement, the losing party shall bear all of the expenses of the prevailing party.

Miscellaneous Provisions

A. Book and Records. The JV shall keep adequate books and records at its place of business, setting forth a true and accurate account of all business transactions arising out of and in connection with the conduct of the JV, and shall be audited by KPMG on an annual basis.

B. Force Majeure. If any party is prevented by any Force Majeure event from performing its obligations specified in this Agreement, the time to perform such obligations by the party affected shall be extended, on a day-for-day basis until the event has ended and normal operations have resumed.

C. Validity of Transaction. Affiliates of the parties to this Agreement may be engaged to perform services for the JV. The validity of any transaction, agreement or payment involving the JV and any affiliates of the parties to this Agreement otherwise permitted by the terms of this Agreement shall not be affected by reason of the relationship between them and such affiliates, provided such transactions have been previously approved by the Board of Directors.



D. Notices. Except as may be otherwise specifically provided in this Agreement, all notices (must be given not less than 30 calendar days) as required or permitted hereunder shall be in writing and shall be deemed to be delivered when received in the United States mail, postage prepaid, certified or registered mail, return receipt requested, addressed to the parties at their respective addresses set forth in this Agreement or subsequent written notice.

E. Indemnification. The parties to this Agreement shall have no liability to the other for any loss suffered which arises out of any action or inaction if, in good faith, it is determined that such course of conduct was in the best interests of the JV and such course of conduct did not constitute negligence or misconduct. The parties to this Agreement shall each be indemnified by the other against losses, judgments, liabilities, expenses and amounts paid in settlement of any claims sustained by it in connection with the JV.

F. Applicable Law and Venue. This Agreement shall be construed and enforced under the laws of the State of Illinois. Each of the parties hereby irrevocably and unconditionally submits to the jurisdiction of the state courts in the State of Illinois,

DuPage County, and any appellate court thereof, in any litigation arising out of or relating to this Agreement or any actions between the parties.

G. Other Instruments and Integrated Agreement. The parties hereto covenant and agree that they will execute each and such other and further instruments and documents as are or may become reasonably necessary or convenient to effectuate and carry out the purposes of this Agreement. This Agreement constitutes the entire understanding and agreement among the parties hereto with respect to the subject matter hereof, and there are no agreements, understandings, restrictions or warranties among the parties other than those set forth herein provided for. Mortgage liens and UCC filings shall be filed and recorded when required.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Agreed and accepted:

The Sonnenschein Groupe (Sonnenschein) (FFIC)

FFIC Beam, Incorporated

_____
Walter N. Kosch, Authorized agent

_____
Robert A. Fields, Director

Signed, sealed and delivered in the presence of:

_____
Witness

_____
Witness

**Walter T Kosch**

| | |
|---|---|
| **From:** | karl neubacher [startech_ag@yahoo.com] |
| **Sent:** | Monday, April 09, 2007 7:06 PM |
| **To:** | Walter T Kosch |
| **Subject:** | Re: Insurance binder |
| **Attachments:** | FFIC E&O Binder (2).pdf; Fidelity+Additional+Insured Binder.pdf |

Please find attached the E&O and the Fidelity Binder.

regards
Karl

*Walter T Kosch <wtkosch@koschlaw.com> wrote:*

Robert and Karl:
Please forward to me the insurance binder that we recently purchased. Thank you.

*Walter J. Kosch, Esq.*
The Kosch Law Firm
A Professional Corporation
Two Transam Plaza Drive, Suite 300
Oakbrook Terrace, Illinois 60181
(630)873-8400 phone
(630)873-4150 fax
CONFIDENTIALITY NOTICE: This transmission and any attachments contain confidential information belonging to the sender which is legally privileged. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone at the number above to arrange for return of the original documents to us.

--
No virus found in this outgoing message.
Checked by AVG Free Edition.
Version: 7.5.446 / Virus Database: 269.0.0/752 - Release Date: 4/8/2007 8:34 PM

--
No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.5.446 / Virus Database: 269.0.0/754 - Release Date: 4/9/2007 10:59 PM

EXHIBIT
H

# ACORD®  INSURANCE BINDER

DATE (MM/DD/YYYY)
3/28/2007

**THIS BINDER IS A TEMPORARY INSURANCE CONTRACT, SUBJECT TO THE CONDITIONS SHOWN ON PAGE 2 SIDE OF THIS FORM.**

| AGENCY | COMPANY | BINDER # |
|---|---|---|
| BCC Facilities, Inc.<br>51 East 42nd Street<br>Suite 1502<br>New York        NY  10017 | Indian Harbor Insurance Co. | B0732800189 |

| | EFFECTIVE | | EXPIRATION | |
|---|---|---|---|---|
| | DATE | TIME | DATE | TIME |
| | 3/1/2007 | 12:01  [X] AM [ ] PM | 3/1/2008 | [X] 12:01 AM [ ] NOON |

| PHONE (A/C, No, Ext): (212) 445-0005 | FAX (A/C, No): (212) 445-0007 |
|---|---|

| CODE: | SUB CODE: | THIS BINDER IS ISSUED TO EXTEND COVERAGE IN THE ABOVE NAMED COMPANY PER EXPIRING POLICY #: ELU096565-07 |
|---|---|---|

| AGENCY CUSTOMER ID: 00000824 | |
|---|---|
| INSURED | DESCRIPTION OF OPERATIONS/VEHICLES/PROPERTY (Including Location) |
| FFIC/Beam Inc.<br>45 Park Place South<br>Suite 279<br>Morristown        NJ  07960 | Investment Advisor |

## COVERAGES

| TYPE OF INSURANCE | COVERAGE/FORMS | DEDUCTIBLE | COINS % | AMOUNT |
|---|---|---|---|---|
| **PROPERTY**  CAUSES OF LOSS<br>[ ] BASIC  [ ] BROAD  [ ] SPEC | | | | |
| **GENERAL LIABILITY** | | EACH OCCURRENCE | | $ |
| [ ] COMMERCIAL GENERAL LIABILITY | | DAMAGE TO RENTED PREMISES | | $ |
| [ ] CLAIMS MADE  [ ] OCCUR | | MED EXP (Any one person) | | $ |
| | | PERSONAL & ADV INJURY | | $ |
| [X] Professional | | GENERAL AGGREGATE | | $    1,000,000 |
| Liability | RETRO DATE FOR CLAIMS MADE: 03/01/07 | PRODUCTS - COMP/OP AGG. | | $ |
| **AUTOMOBILE LIABILITY** | | COMBINED SINGLE LIMIT | | $ |
| [ ] ANY AUTO | | BODILY INJURY (Per person) | | $ |
| [ ] ALL OWNED AUTOS | | BODILY INJURY (Per accident) | | $ |
| [ ] SCHEDULED AUTOS | | PROPERTY DAMAGE | | $ |
| [ ] HIRED AUTOS | | MEDICAL PAYMENTS | | $ |
| [ ] NON-OWNED AUTOS | | PERSONAL INJURY PROT | | $ |
| | | UNINSURED MOTORIST | | $ |
| | | | | $ |
| **AUTO PHYSICAL DAMAGE**  DEDUCTIBLE<br>[ ] COLLISION: _____<br>[ ] OTHER THAN COL: _____ | [ ] ALL VEHICLES  [ ] SCHEDULED VEHICLES | ACTUAL CASH VALUE | | |
| | | STATED AMOUNT | | $ |
| | | OTHER | | |
| **GARAGE LIABILITY** | | AUTO ONLY - EA ACCIDENT | | $ |
| [ ] ANY AUTO | | OTHER THAN AUTO ONLY: | | |
| | | EACH ACCIDENT | | $ |
| | | AGGREGATE | | $ |
| **EXCESS LIABILITY** | | EACH OCCURRENCE | | $ |
| [ ] UMBRELLA FORM | | AGGREGATE | | $ |
| [ ] OTHER THAN UMBRELLA FORM | RETRO DATE FOR CLAIMS MADE: | SELF-INSURED RETENTION | | $ |
| **WORKERS COMPENSATION AND EMPLOYER'S LIABILITY** | | WC STATUTORY LIMITS | | |
| | | E.L. EACH ACCIDENT | | $ |
| | | E.L. DISEASE - EA EMPLOYEE | | $ |
| | | E.L. DISEASE - POLICY LIMIT | | $ |
| **SPECIAL CONDITIONS/ OTHER COVERAGES** | | FEES | | $ |
| | | TAXES | | $ |
| | | ESTIMATED TOTAL PREMIUM | | $ |

| NAME & ADDRESS | | |
|---|---|---|
| | [ ] MORTGAGEE  [ ] ADDITIONAL INSURED<br>[ ] LOSS PAYEE | |
| | LOAN # | |
| | AUTHORIZED REPRESENTATIVE<br>Michael Katzman/MC | _[signature]_ |

| ACORD 75 (2004/09) | NOTE: IMPORTANT STATE INFORMATION ON PAGE 2 | © ACORD CORPORATION 1993-2004 |
|---|---|---|

# CONDITIONS

This Company binds the kind(s) of insurance stipulated on page 1  The Insurance is subject to the terms, conditions and limitations of the policy(ies) in current use by the Company

This binder may be cancelled by the Insured by surrender of this binder or by written notice to the Company stating when cancellation will be effective  This binder may be cancelled by the Company by notice to the Insured in accordance with the policy conditions  This binder is cancelled when replaced by a policy  If this binder is not replaced by a policy, the Company is entitled to charge a premium for the binder according to the Rules and Rates in use by the Company

## Applicable in California

When this form is used to provide insurance in the amount of one million dollars ($1,000,000) or more, the title of the form is changed from "Insurance Binder" to "Cover Note"

## Applicable in Colorado

With respect to binders issued to renters of residential premises, home owners, condo unit owners and mobile home owners, the insurer has thirty (30) business days, commencing from the effective date of coverage, to evaluate the issuance of the insurance policy

## Applicable in Delaware

The mortgagee or Obligee of any mortgage or other instrument given for the purpose of creating a lien on real property shall accept as evidence of insurance a written binder issued by an authorized insurer or its agent if the binder includes or is accompanied by: the name and address of the borrower; the name and address of the lender as loss payee; a description of the insured real property; a provision that the binder may not be canceled within the term of the binder unless the lender and the insured borrower receive written notice of the cancellation at least ten (10) days prior to the cancellation; except in the case of a renewal of a policy subsequent to the closing of the loan, a paid receipt of the full amount of the applicable premium, and the amount of insurance coverage

Chapter 21 Title 25 Paragraph 2119

## Applicable in Florida

Except for Auto Insurance coverage, no notice of cancellation or nonrenewal of a binder is required unless the duration of the binder exceeds 60 days  For auto insurance, the insurer must give 5 days prior notice, unless the binder is replaced by a policy or another binder in the same company

## Applicable in Nevada

Any person who refuses to accept a binder which provides coverage of less than $1,000,000 00 when proof is required: (A) Shall be fined not more than $500 00, and (B) is liable to the party presenting the binder as proof of insurance for actual damages sustained therefrom

BCC Facilities, Inc.
51 East 42nd Street
Suite 1502
New York, NY 10017

| Customer | |
|---|---|
| Date | 4/04/2007 |
| Customer Service | Joseph Hatt |
| Page | 1 of 1 |

| Payment Information | |
|---|---|
| Invoice Summary | 7,321.00 |
| Payment Amount | |
| Payment for: | invoice #8175 |
| SAA 734-61-90 | |

FFIC/Beam Inc
45 Park Place South
Suite 275
Morristown, NJ 07960

Customer: FFIC/Beam Inc

| Invoice | Effective | Transaction | Description | Amount |
|---|---|---|---|---|
| 8175 | 03/01/2007 | Policy change | Policy #SAA 734-61-90  03/01/2007-03/01/2008<br>Great American Insurance Co<br>Add Walter T. Kosch Esq. At | 7,321.00 |

| Total |
|---|
| 7,321.00 |

Thank You

| BCC Facilities, Inc.<br>51 East 42nd Street  Suite 1502<br>New York, NY  10017 | (212)445-0005 | Date |
|---|---|---|
| | | 04/04/2007 |

ACORD

# INSURANCE BINDER

THIS BINDER IS A TEMPORARY INSURANCE CONTRACT, SUBJECT TO THE CONDITIONS SHOWN ON PAGE 2 SIDE OF THIS FORM

| AGENCY | | | | |
|---|---|---|---|---|
| BCI Facilities Int<br>80 East 42nd Street<br>Suite 1502<br>New York NY | COMPANY Great American Insurance | | | |
| | BINDER # B1010001BE | | | |
| | DATE EFFECTIVE | TIME | EXPIRATION DATE | TIME |
| PHONE (A/C, No, Ext): (212)449-9099 FAX: (212)449-9000 | | | | |
| CODE: SUB CODE: | | | | |
| AGENT CUSTOMER ID: BCI0Q0624 | THIS BINDER IS ISSUED TO EXTEND COVERAGE IN THE ABOVE NAMED COMPANY | | | |
| INSURED | DESCRIPTION OF OPERATIONS/VEHICLES/PROPERTY (Including Location) | | | |
| FFIC/Bear Inc.<br>45 Park Place, Suite 205<br>Morristown, NJ 07960 | Investment Advisors | | | |

## COVERAGES

| TYPE OF INSURANCE | COVERAGE/FORMS | DEDUCTIBLE | COINS % | AMOUNT |
|---|---|---|---|---|
| **PROPERTY** CAUSES OF LOSS | Employee Dishonesty | 150,000 | N/A | 6,000,000 |
| BASIC BROAD SPEC | Forgery or Alteration | 250,000 | N/A | 6,000,000 |
| X Crime | Inside/Outside Premises | 250,000 | N/A | 6,000,000 |
| | Computer or Funds Transfer Fraud | 250,000 | N/A | 6,000,000 |

| **GENERAL LIABILITY** | | | |
|---|---|---|---|
| COMMERCIAL GENERAL LIABILITY | | EACH OCCURRENCE | $ |
| CLAIMS MADE OCCUR | | DAMAGE TO RENTED PREMISES | $ |
| | | MED EXP (Any one person) | $ |
| | | PERSONAL & ADV INJURY | $ |
| | | GENERAL AGGREGATE | $ |
| | RETRO DATE FOR CLAIMS MADE | PRODUCTS - COMP/OP AGG | $ |

| **AUTOMOBILE LIABILITY** | | | |
|---|---|---|---|
| | | COMBINED SINGLE LIMIT | $ |
| ANY AUTO | | BODILY INJURY (Per person) | $ |
| ALL OWNED AUTOS | | BODILY INJURY (Per accident) | $ |
| SCHEDULED AUTOS | | PROPERTY DAMAGE | $ |
| HIRED AUTOS | | MEDICAL PAYMENTS | $ |
| NON-OWNED AUTOS | | PERSONAL INJURY PROT | $ |
| | | UNINSURED MOTORIST | $ |
| | | | $ |

| **AUTO PHYSICAL DAMAGE** DEDUCTIBLE | ALL VEHICLES SCHEDULED VEHICLES | | |
|---|---|---|---|
| COLLISION | | ACTUAL CASH VALUE | |
| OTHER THAN COL | | STATED AMOUNT | $ |
| | | OTHER | |

| **GARAGE LIABILITY** | | | |
|---|---|---|---|
| ANY AUTO | | AUTO ONLY - EA ACCIDENT | $ |
| | | OTHER THAN AUTO ONLY | |
| | | EACH ACCIDENT | $ |
| | | AGGREGATE | $ |

| **EXCESS LIABILITY** | | | |
|---|---|---|---|
| | | EACH OCCURRENCE | $ |
| UMBRELLA FORM | | AGGREGATE | $ |
| OTHER THAN UMBRELLA FORM | RETRO DATE FOR CLAIMS MADE | SELF-INSURED RETENTION | $ |

| **WORKERS COMPENSATION AND EMPLOYERS LIABILITY** | | | |
|---|---|---|---|
| | | WC STATUTORY LIMITS | |
| | | E.L. EACH ACCIDENT | $ |
| | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | E.L. DISEASE - POLICY LIMIT | $ |

| **SPECIAL CONDITIONS/ OTHER COVERAGES** | | | |
|---|---|---|---|
| | | FEES | $ |
| | | TAXES | $ |
| | | ESTIMATED TOTAL PREMIUM | $ |

## NAME & ADDRESS

| | | | |
|---|---|---|---|
| Walter T. Kosch Esq<br>Two Trans AM Plaza Drive<br>Suite 300<br>Oakbrook, IL 60181 | MORTGAGEE | X | ADDITIONAL INSURED |
| | LOSS PAYEE | | |
| | LOAN # P/N 10 10 | | |
| | AUTHORIZED REPRESENTATIVE | | |
| | Michael Katzenstein | | |

ACORD 75 (2004/09)    NOTE: IMPORTANT STATE INFORMATION ON PAGE 2    © ACORD CORPORATION 1993-2004

INS075 (200409).04a    Page 1 of 2



# CONDITIONS

The Company agrees that insurance under this binder shall be in effect. The insurance be subject to its terms, conditions, and limits of the policy as in current use by the Company.

The binder may be cancelled by the insured by surrender of this binder or by written notice to the Company stating when cancellation will be effective. This binder may be cancelled by the Company by mailing to the insured in accordance with the policy terms. If this binder is for a loan when requested by such, at the address of the lender if not included, but if such, the Company is entitled to charge a premium for this binder according to the Rules and Rates in use by the Company.

### Applicable in California

When this form is used to replace insurance in the amount of one million dollars ($1,000,000) or more, the title of the form is changed from "Insurance Binder" to "Cover Note".

### Applicable in Colorado

With respect to binders issued to renters of residential premises, home owners, condo unit owners and mobile home owners, the insurer has thirty (30) business days, commencing from the effective date of coverage, to evaluate the issuance of the insurance policy.

### Applicable in Delaware

The mortgagee or Obligee of any mortgage or other instrument given for the purpose of creating a lien on real property shall accept as evidence of insurance a written binder issued by an authorized insurer or its agent if the binder includes or is accompanied by the name and address of the borrower: the name and address of the lender as loss payee, a description of the insured real property, a provision that the binder may not be canceled within the term of the binder unless the lender and the insured borrower receive written notice of the cancellation at least ten (10) days prior to the cancellation, except in the case of a renewal of a policy subsequent to the closing of the loan, a paid receipt of the full amount of the applicable premium, and the amount of insurance coverage.

Chapter 21 Title 25 Paragraph 2119

### Applicable in Florida

Except for Auto Insurance coverage, no notice of cancellation or nonrenewal of a binder is required unless the duration of the binder exceeds 60 days. For auto insurance, the insurer must give 5 days prior notice, unless the binder is replaced by a policy or another binder in the same company.

### Applicable in Nevada

Any person who refuses to accept a binder which provides coverage of less than $1,000,000.00 when proof is required: (A) Shall be fined not more than $500.00, and (B) is liable to the party presenting the binder as proof of insurance for actual damages sustained therefrom.

**Walter T Kosch**

| | |
|---|---|
| **From:** | prelu autajay [prelua@yahoo.com] |
| **Sent:** | Saturday, April 21, 2007 6:46 AM |
| **To:** | karl neubacher |
| **Subject:** | Fwd: Notice |
| **Attachments:** | Notice (2.60 KB) |

Karl,

FFIC's Attorneys have notified us of the time frame of funding the Bond Offerings !

Thanks

Robert Fields

Note: forwarded message attached.

---

Ahhh...imagining that irresistible "new car" smell?
Check out new cars at Yahoo! Autos.

EXHIBIT

I

Walter T Kosch

**From:** bedona law office [bedonalawoffice@yahoo.com]
**Sent:** Saturday, April 21, 2007 3:37 AM
**To:** prelua@yahoo.com
**Subject:** Notice

April 20, 2007

Mr. Robert Fields
FFIC/BEAM, Inc.

Dear Mr. Fields:

Please be informed that I will be out of the office effective April 25, 2005 and I cannot delegate to any of my partners in the law firm any authority or obligation pertaining to any sensitive transactions I engaged with FFIC/BEAM, Inc. or entered for an its behalf.

With respect to any new bond offerings for this year, we are of the opinion that they can still be started but not placed until the end of February, 2008.

We wish to ask your assitance by informing your new clients about this development.

Best regards.

Truly yours,

VON LOVEL D. BEDONA

---

Ahhh...imagining that irresistible "new car" smell?
Check out new cars at Yahoo! Autos.

**Walter T Kosch**

| | |
|---|---|
| **From:** | karl neubacher [startech_ag@yahoo.com] |
| **Sent:** | Saturday, April 21, 2007 8:45 AM |
| **To:** | Walter N. Kosch; Walter T. Kosch |
| **Subject:** | Fwd: Notice |
| **Attachments:** | Notice (4.62 KB) |

Note: forwarded message attached.

--
No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.5.446 / Virus Database: 269.5.7/771 - Release Date: 4/21/2007 11:56 AM

TYPE LAW              SHERIFF'S OFFICE OF COOK COUNTY, ILLINOIS        DISTRICT 023

SHERIFF'S NUMBER 926425-001L CASE NUMBER 07L014112——DEPUTY: _Sullivan 5229_

FILED DT 12-19-2007 RECEIVED DT 12-19-2008 DIE DT 01-09-2008 MULTIPLE SERVICE   1
    DEFENDANT                          ATTORNEY
NEUBACHER, KARL                        MICHAEL LEE TINAGLIA
1120 N LA SALLE ST                     X
CHICAGO IL. 60610                      X XX. 00000
14E                                    847 692-0421
PLAINTIFF WALTER N KOSCH

SERVICE INFORMATION: KS

*********************************************************************************
(A)  I CERTIFY THAT I SERVED THIS SUMMONS ON THE DEFENDANT AS FOLLOWS:

.....1 PERSONAL SERVICE:  BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT WITH THE
       NAMED DEFENDANT PERSONALLY.
.....2 SUBSTITUTE SERVICE:  BY LEAVING A COPY OF THE SUMMONS AND A COPY OF THE COMPLAINT
       AT THE DEFENDANT'S USUAL PLACE  OF ABODE WITH SOME PERSON OF THE FAMILY OR A PERSON
       RESIDING THERE, OF THE AGE OF 13 YEARS OR UPWARDS, AND INFORMING THAT PERSON OF
       THE CONTENTS THEREOF. ALSO, A COPY OF THE SUMMONS WAS MAILED ON THE
       _____ DAY OF _____ 20___, IN A SEALED ENVELOPE WITH POSTAGE FULLY
       PREPAID, ADDRESSED TO THE DEFENDANT AT HIS OR HER USUAL PLACE OF ABODE.
       SAID PARTY REFUSED NAME _____
.....3 SERVICE ON: CORPORATION____COMPANY____BUSINESS____PARTNERSHIP____
       BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT (OR INTERROGATORIES) WITH THE
       REGISTERED AGENT, AUTHORIZED PERSON OR PARTNER  OF THE DEFENDANT.
.....4 CERTIFIED MAIL_____

(B)  THOMAS J. DART, SHERIFF, BY: _____Sul.5229_____, DEPUTY

    1  SEX___M/F    RACE____    AGE____
    2  NAME OF DEFENDANT NEUBACHER, KARL
       __WRIT SERVED ON ____N/S____
       THIS 09 DAY OF JAN , 2008 TIME 628 A.M.(P.M)

    ADDITIONAL REMARKS _____

*********************************************************************************
THE NAMED DEFENDANT WAS NOT SERVED.

TYPE OF BLDG  H/R Apts                    ATTEMPTED SERVICES

NEIGHBORS NAME _____    DATE       TIME A.M./P.M.  Knocked
                                       09JAN08   628 pm 5229     N/A
    ADDRESS _____       _____    ____:____

    REASON NOT SERVED:                 _____    ____:____
         ____07 EMPLOYER REFUSAL
    01 MOVED    ____08 RETURNED BY ATTY   _____    ____:____
  X 02 NO CONTACT  ____09 DECEASED
  X 03 EMPTY LOT   ____10 BLDG DEMOLISHED  _____    ____:____
    04 NOT LISTED  ____11 NO REGISTERED AGT.
    05 WRONG ADDRESS ____12 OTHER REASONS  _____    ____:____
    06 NO SUCH ADDRESS ____13 OUT OF COUNTY
                                        _____    ____:____

FEE    .00   MILEAGE    .00   TOTAL    .00              SG23